## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

| | |
|---|---|
| **CINDY CHILDRESS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) CAUSE NO. 1:08CV-00155-R |
| | ) |
| **CORVAC COMPOSITES, LLC and** | ) |
| **KELLY SERVICES, INC.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1. This is an employment discrimination action brought by Plaintiff, Cindy Childress ("Childress"), against Corvac Composites, LLC ("Corvac") and Kelly Services, Inc., ("Kelly Services") (collectively "Defendants") for unlawfully violating her rights as protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq, as amended, 42 U.S.C. § 1981a and the Kentucky Civil Rights Act ("KCRA").

### II. PARTIES

2. Childress is a resident of Butler County in the Commonwealth of Kentucky, who at all times relevant to this action resided within the geographical boundaries of the Western District of Kentucky.

3. Corvac is a Foreign Limited Liability Company, which maintained offices and conducted operations in Butler County within the Western District of Kentucky.

4. Kelly Services is a Foreign Corporation, which maintained offices and conducted operations in Butler County within the Western District of Kentucky.

### III. JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331, 28 U.S.C. § 1367, and 42 U.S.C. § 2000e-5(f)(3).

6. Childress' state law claim arises from the same common nucleus of operative facts as her federal law claims and all of her claims form a single case and controversy under Article III of the United States Constitution.

7. Corvac is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and KRS 344.030(2).

8. Kelly Services is an "employer" within the meaning of 42 U.S.C. § 2000e(b) and KRS 344.030(2).

9. Childress was an "employee" of Kelly Services within the meaning of 42 U.S.C. § 2000e(f) and KRS 344.030(5).

10. Childress satisfied her obligation to exhaust her administrative remedies, having timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on sex and retaliation. Childress received the appropriate Notice of Right to Sue and brings this original action within ninety (90) days of her receipt thereof.

11. All events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Western District of Kentucky, thus venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

12. Childress, a female, was hired by Kelly Services on or about December 6, 2007. Childress was immediately assigned by Kelly to work for Corvac.

13. Childress worked as an Operator and, at all times relevant, met or exceeded both

employers legitimate performance expectations.  Childress' normal schedule was third shift from 11pm to 7am.

14.     During her employment, Childress was subject to unwelcome sexual harassment by a coworker named Robert Leon Thomason.  Thomason's harassment of Childress was severe and pervasive and significantly altered the terms and conditions of her employment.  On Thomason's first day, Childress was assigned by Corvac to train him.  During the training, Thomason made several sexual comments regarding other females in the factory, such as she "has a nice ass" and "I'd like to do that ass."   After being subject to Thomason's lewd comments, Childress complained to her supervisor, John Smith, a Corvac employee, about being assigned to train Thomason.

15.     Nonetheless, Childress was forced to continue working with Thomason the following week.  During the course of that week, Thomason routinely made sexually suggestive and lewd comments regarding women in the factory and a purported girlfriend.

16.     On or about January 10, 2008, Thomason had been assigned to sweep out a particular area of the factory.  Thomason approached Childress and stated that he had "swept out a corner for [them] to fuck in."  Childress unequivocally told Thomason that his comments were unwelcome.  Whereupon, Thomason began to pose and flex for Childress.  When Childress expressed to Thomason that his actions continued to be unwelcome, Thomason suggested to Childress that he "will show [her] another muscle" and made a motion toward his crotch.

17.     Childress again complained to John Smith about Thomason's sexual harassment.  Smith responded that he would talk to Thomason.  Childress specifically requested not to have to work alongside Thomason.

18. Nevertheless, on the following night, Childress was required to inform Thomason of when he could take his breaks.

19. Childress met with Felicia Summers, a Human Resources Representative for Corvac, regarding Thomason's sexual harassment on or about January 11, 2008. Childress detailed Thomason's actions for Summers. Afterward, Childress was sent home from work, while all other employees were allowed to remain for a company wide meeting.

20. On January 11, 2008, Sharon Kimbley, Kelly's Staffing Supervisor, called Childress at 11:00 a.m. Kimbley left a message with Childress' husband that Childress was required to meet with Summers at 2:30 p.m., and if she did not attend the meeting, her job would be in jeopardy. When Childress returned her call, Kimbley threatened Childress, stating "[d]o you really want to do this?"

21. Childress attended the meeting as required. Kimbley and Summers were in attendance at the meeting. During the meeting, Kimbley repeatedly asked Childress, "[d]id you bring this on yourself?" Throughout this inquisition, Kimbley and Summers treated and implied that Childress was a whore. When they asked Childress to write up the events regarding Thomason's sexual harassment, they instructed Childress to "clean it up," meaning that she should not include what Thomason actually said or did.

22. On or about January 13, 2008, Thomason intentionally stalked Childress at work. Despite being assigned elsewhere, Thomason kept coming to Childress' work area and, at one point, attempted to hit her with a cart. Defendants took no remedial action to protect Childress.

23. On or about January 14, 2008, Childress was again required to inform Thomason of when he could take his breaks.

24.     On or about January 15, 2008, Summers recommended to Kimbley that Childress be released from her assignment with Corvac.  On that same day, Kimbley terminated Childress' employment.  Both actions were taken in retaliation for Childress's complaints of sexual harassment.

## V. CAUSES OF ACTION

### COUNT I: SEXUAL HARASSMENT

25.     Childress hereby incorporates paragraphs one (1) through twenty-four (24) of her complaint as if the same were set forth at length herein.

26.     Childress was subject to unwelcome sexual harassment, so severe and pervasive that it altered the terms and conditions of her employment so as to create a hostile work environment.

27.     Defendants conduct was deliberate, willful, and in reckless disregard for Childress' rights as protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq, 1981a and KRS 344.280 et. seq.

28.     Childress has suffered, and continues to suffer, damages as a result of Defendants' unlawful conduct.

### COUNT II: RETALIATION

29.     Childress hereby incorporates paragraphs one (1) through twenty-eight (28) of her complaint as if the same were set forth at length herein.

30.     Childress engaged in 'protected activity' as those terms are defined by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., 1981a and KRS 344.280 et. seq.

31. Subsequent to Childress engaging in protected activity, Defendants retaliated against her by releasing her from her assignment and terminating her employment.

32. Defendants' conduct was deliberate, willful, and in reckless disregard for Childress' rights as protected by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., 1981a and KRS 344.280 et. seq.

33. Childress has suffered and continues to suffer damages as a result of Defendants' unlawful actions.

### VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Cindy Childress, respectfully requests that this Court enter judgment in her favor and award her the following relief:

1. Reinstate her to the position, salary, and seniority level she would have enjoyed but for Defendants' unlawful actions; and/or payment to Childress of front pay in lieu thereof;

2. All wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Compensatory damages;

5. Punitive damages for Defendant's violations of Title VII of the Civil Rights Act;

6. All costs and attorney's fees incurred as a result of bringing this action;

7. Pre- and post-judgment interest on all sums recoverable; and

8. All other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

BIESECKER & DUTKANYCH, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Attorney No. 91190
317 SE Third Street
Evansville, IN 47713
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Cindy Childress

## DEMAND FOR JURY TRIAL

Plaintiff, Cindy Childress, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

BIESECKER & DUTKANYCH, LLC

By: /s/ Andrew Dutkanych III
Andrew Dutkanych III, Attorney No. 91190
317 SE Third Street
Evansville, IN 47713
Telephone: (812) 424-1000
Facsimile: (812) 424-1005
Email: ad@bdlegal.com

Attorneys for Plaintiff, Cindy Childress